UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

MICHAEL KEITH GEORGE,

        Plaintiff,                Case No. 1:22-cv-125

v.                                   Honorable Phillip J. Green

CAROL KENISON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 12.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may

2

conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues Qualified Mental Health Professionals (QMHP) Carol Kenison and Brian Kajercyzk.

Plaintiff's allegations are scant. He avers that Defendants "diagnosed him with a psychotic disorder and medicated him with a strong anti-psychotic medication named Haldol against his will." (ECF No. 1, PageID.8.) Plaintiff alleges that within days of starting Haldol, he began "displaying side-effects such as muscle fatigue, stiff muscles, migraine headaches, decreased energy, blurry vision, confusion, and the inability to concentrate." (*Id.*)

The exhibits attached to Plaintiff's complaint indicate that he submitted three healthcare requests in June of 2020. (ECF No. 1-2.) In those requests, Plaintiff indicated that his medication made him sick. (*Id.*) In two of the requests, he asked to receive a snack bag with the medication. (*Id.*, PageID.21, 23.) Plaintiff also submitted a grievance regarding his placement on Haldol. (ECF No. 1-1.) The grievance indicates that Defendants conducted a record review in response. (*Id.*, PageID.14.) Plaintiff appealed. (*Id.*, PageID.15.) In response, Assistant Mental Health Services Director Tom Osier (not a party) indicated that the medication prescribed to Plaintiff was "done so by the mental health professional practicing with the scope of their education, training and experience and within the policy directives

set forth by the MDOC, specifically the current MDOC BHCS formulary." (*Id.*, PageID.16.) Osier noted that Plaintiff "did see the provider again to address the matter and changes were made to the regimen." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. (ECF No. 1, PageID.3, 6, 9.) Plaintiff also vaguely references violations of State law, 42 U.S.C. § 1985, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132-12165 and the Rehabilitation Act (RA), 29 U.S.C. §§ 504, 794. (*Id.*, PageID.6.) Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.4, 6, 9.)

On April 14, 2022, Plaintiff filed a document titled "Supplemental Civil Rights Complaint." (ECF No. 13.) The supplement includes no factual allegations. It states only that "defendants violated my 8th and 14th Amendment rights." (*Id.*, PageID.78.) Plaintiff identifies one individual as a defendant in the caption: Haston. (*Id.*, PageID.77.) The first grievance attached to Plaintiff's complaint indicates that Haston prescribed the medication and that Plaintiff complained to Haston about the side effects. (ECF No. 1-1, PageID.14.)

## II.   Complaint Supplement/Amendment

A party may amend his or her pleading once, as a matter of course, in the preliminary stages of a case. Fed. R. Civ. P. 15(a)(1). A party may not, however, supplement the initial pleading without the permission of the Court. Fed. R. Civ. P. 15(d). A supplemental pleading is one "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id*. In his new pleading, Plaintiff does not identify any transactions, occurrences, or events that

5

happened after the date of his initial complaint. Accordingly, Plaintiff may file the amended pleading as a matter of course.

Ordinarily "'[a]n amended complaint supersedes an earlier complaint for all purposes.'" *Calhoun v. Bergh*, 763 F.3d 409, 410 (6th Cir. 2014) (citing *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)); *see also Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009). Because Plaintiff's amended pleading includes no factual allegations, the Court will not consider it standing alone. Instead, the Court will read Plaintiff's initial pleading and his amended pleading together.

### III. Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

6

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Claims Pursuant to 42 U.S.C. § 1985

Plaintiff vaguely suggests that Defendants conspired to violate his rights, in violation of 42 U.S.C. § 1985. (ECF No. 1, PageID.6.) To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[2] a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d

---

[2] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

7

1070, 1078 (6th Cir. 1998). Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff's complaint is devoid of facts suggesting that Defendants' alleged actions were motivated by his membership in a distinct class. Plaintiff's § 1985 conspiracy claim will, therefore, be dismissed.

### B. Claims Pursuant to the ADA and RA

Plaintiff also vaguely suggests that Defendants violated his rights under the ADA and RA. (ECF No. 1, PageID.6.) Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[3] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability;

---

[3] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557, n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846, n.2 (6th Cir. 1995)).

(2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Here, Plaintiff has named Defendants only in their individual capacities. (ECF No. 1, PageID.6.) Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). In any event, Plaintiff fails to allege that Defendants discriminated against him, or denied him benefits or access to a "service, program, or activity" of the state, because of his psychotic disorder. Plaintiff's ADA and RA claims will, therefore, be dismissed.

## C. Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights.

### 1. Fourteenth Amendment Due Process Claims

In *Vitek v. Jones*, 445 U.S. 480, 493 (1980), the United States Supreme Court held that a criminal conviction does not authorize the state to classify a prisoner as mentally ill, transfer him to a mental institution, and subject him to involuntary psychiatric treatment without affording him additional due process protections. The *Vitek* Court noted that the state had a strong interest in segregating and treating mentally ill patients, but that a prisoner's interest in not being arbitrarily classified as mentally ill, transferred to a mental institution, and subjected to involuntary treatment was also strong. The Court concluded that the state must apply "appropriate procedural safeguards against error." *Id.* at 495.

In a subsequent case, the Supreme Court addressed the due process implications of involuntarily medicating a prisoner separately from the classification and transfer aspects of *Vitek*. In that case, the prisoner was medicated without his consent pursuant to a written policy:

> Policy 600.30 was developed in partial response to this Court's decision in *Vitek v. Jones,* 445 U.S. 480 (1980). The Policy has several substantive and procedural components. First, if a psychiatrist determines that an inmate should be treated with antipsychotic drugs but the inmate does not consent, the inmate may be subjected to involuntary treatment with the drugs only if he (1) suffers from a "mental disorder" and (2) is "gravely disabled" or poses a "likelihood of serious harm" to himself, others, or their property. Only a psychiatrist may order or approve the medication. Second, an inmate who refuses to take the medication voluntarily is entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the Center, none of whom may be, at the time of the hearing, involved in the inmate's treatment or diagnosis. If the committee determines by a majority vote that the inmate suffers from a mental disorder and is gravely disabled or dangerous, the inmate may be medicated against his will, provided the psychiatrist is in the majority.
>
> Third, the inmate has certain procedural rights before, during, and after the hearing. He must be given at least 24 hours' notice of the Center's intent to convene an involuntary medication hearing, during which time he may not be medicated. In addition, he must receive notice of the tentative diagnosis, the factual basis for the diagnosis, and why the staff believes medication is necessary. At the hearing, the inmate has the right to attend; to present evidence, including witnesses; to cross-examine staff witnesses; and to the assistance of a lay adviser who has not been involved in his case and who understands the psychiatric issues involved. Minutes of the hearing must be kept, and a copy provided to the inmate. The inmate has the right to appeal the committee's decision to the Superintendent of the Center within 24 hours, and the Superintendent must decide the appeal within 24 hours after its receipt. *See* App. to Pet. for Cert. B-3. The inmate may seek judicial review of a committee decision in state court by means of a personal restraint petition or extraordinary writ. *See* Wash. Rules App. Proc. 16.3 to 16.17; App. to Pet. for Cert. B-8.

> Fourth, after the initial hearing, involuntary medication can continue only with periodic review. When respondent first refused medication, a committee, again composed of a nontreating psychiatrist, a psychologist, and the Center's Associate Superintendent, was required to review an inmate's case after the first seven days of treatment. If the committee reapproved the treatment, the treating psychiatrist was required to review the case and prepare a report for the Department of Corrections medical director every 14 days while treatment continued.

*Washington v. Harper*, 494 U.S. 210, 215–16 (1990) (footnotes omitted). The Court concluded that Harper "possesse[d] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Id*. at 221–22. Nonetheless, the Court also determined that the liberty interest "must be defined in the context of the inmate's confinement." *Id*. at 222. The Court held "that, given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id*. at 227. The Court concluded that the State of Washington's policy satisfied those requirements.

Within the MDOC, the procedure for the involuntary treatment of a prisoner with psychotropic medication is set forth in MDOC Policy Directive 04.06.183. This policy directive provides that a prisoner may be temporarily subjected to involuntary treatment with psychotropic medication where the following conditions are met: "a psychiatrist's certificate [is] executed which states [that] the prisoner is mentally ill"; the psychiatrist also concludes that the prisoner "is a present danger to himself or herself or to others"; "the prisoner refuses treatment"; and the psychiatrist orders

12

"involuntary administration of psychotropic medication pending the convening of a Hearing Committee." *See* MDOC Policy Directive 04.06.183 ¶¶ Q–R (eff. Oct. 9, 1995).

The prisoner must be provided with a copy of the "Psychiatric Certificate, Psychiatric Report, QMHP Report, and a notice of hearing and rights to the prisoner and, if one has been appointed, to the guardian of the person" prior to the hearing committee being convened. *Id.* ¶ S. The prisoner must be assigned a Mental Health Advisor and must not be medicated for twenty-four hours prior to the hearing. *Id.* ¶ T. The hearing committee must consist of "a psychiatrist, a fully licensed psychologist, and another mental health professional whose licensure or registration requirements include a minimum of a baccalaureate degree from an accredited college or university, none of whom is, at the time of the hearing, involved in the prisoner's treatment or diagnosis." *Id.* ¶ C. The hearing committee must consider "the QMHP Report alleging that the prisoner is mentally ill, the Psychiatric Report, the Psychiatrist's Certificate, proof that a notice of hearing has been served, proof that the prisoner has not been medicated within 24 hours and any other admissible evidence presented at the hearing." *Id.* ¶ W. The prisoner has the right to attend the hearing, may bring along his or her guardian, and is entitled to the assistance of his or her mental health advisor. *Id.* ¶ X. The prisoner may present evidence, including witnesses, and may cross-examine witnesses. *Id.* The hearing committee must then "determine whether the prisoner is mentally ill and, if so, whether the proposed mental health services are suitable to the prisoner's condition. A finding of mental illness must be confirmed by the psychiatrist on the Hearing Committee to be valid."

13

*Id.* ¶ Y. The committee must prepare an official record of the hearing and must present to the prisoner a report of their findings and orders, along with an appeal form. *Id.* ¶¶ Z–AA. The initial period of treatment may not exceed ninety days. *Id.* ¶ AA. The prisoner may then appeal the hearing committee's decision to the Director of the Corrections Mental Health Program with the assistance of their Mental Health Advisor; the prisoner may then appeal that decision to the appropriate state circuit court. *Id.* ¶ DD. The policy also provides for renewal of the medication order. *Id.* ¶¶ EE–FF. The prisoner is also entitled to a copy of the corrections mental health program ("CMHP") guidebook which contains "rights information," and is to be offered an "opportunity to consult with staff from the Office of the Legislative Corrections Ombudsman." *Id.* ¶ GG.

Because none of the members of the hearing committee may be involved in the inmate's current treatment or diagnosis, the MDOC policy provides for an independent decisionmaker. The policy also provides that the inmate has right to be present at the hearing and present evidence, and can appeal the decision to the Director of the CMHP and the circuit court. Therefore, it is clear that the MDOC policy passes rational basis scrutiny and satisfies procedural due process. *Harper*, 494 U.S. at 233–35.

Plaintiff's complaint is largely conclusory and fails to allege facts indicating that he was denied a hearing, was not allowed to present at the hearing, or was not allowed to file an appeal. In *Harper*, the Supreme Court stated:

> Under Policy 600.30, the decisionmaker is asked to review a medical treatment decision made by a medical professional. That review requires two medical inquiries: first, whether the inmate suffers from a "mental disorder"; and second, whether, as a result of that disorder, he is dangerous to himself, others, or their property. Under the Policy, the hearing committee reviews on a regular basis the staff's choice of both the type and dosage of drug to be administered, and can order appropriate changes. 110 Wash.2d, at 875, 759 P.2d, at 360. The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that due process requires no more.

*Id.* at 232–33. Here, Plaintiff fails to allege facts from which the Court could infer that he was denied the protections afforded by MDOC Policy Directive 04.06.183. Accordingly, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### 2. Eighth Amendment Claims

Plaintiff also contends that Defendants violated his Eighth Amendment rights by involuntarily treating him with Haldol despite his complaints of side effects. The Sixth Circuit has held that the Eighth Amendment was not violated by the involuntary administration of lithium to a mentally ill patient:

> There is a recognized Eighth Amendment protection for prisoners against "deliberate indifference" to a serious medical need, but that indifference generally involves the *failure* to provide medical care. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In cases like Kramer's, where the medical personnel are treating him and have made a decision about the precise course of action he requests, claims are generally unsuccessful. *E.g., Davis v. Agosto,* 89 F. App'x 523, 529 (6th Cir. 2004) (denying Eighth Amendment claim on summary judgment where

15

> defendant argued that the unwanted treatment of a head wound unnecessarily inflicted pain upon him).
>
> This is because *failing* to prevent medical harm only "rises to the level of a constitutional violation where both objective and subjective requirements are met." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Where the prisoner was in the care of a doctor (and the allegation is deliberate indifference based on care given and not intentional infliction of pain), our cases offer two verbal formulations to describe when a doctor's actions were subjectively callous so as to be constitutionally cruel and unusual punishment. First, if the prisoner received "grossly inadequate care," we will conclude a doctor acted with "subjective" deliberate indifference. *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006). Second, we have favorably cited the Eleventh Circuit's test: "whether a reasonable doctor . . . could have concluded his actions were lawful." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1034 (11th Cir. 1989)). While both approaches lack absolute analytic precision, it is clear that Kramer has not alleged facts that rise to the level of seriousness they convey. Kramer asserts only that he disagrees with the decision to keep him on lithium in the face of the risk of kidney failure and that outside doctors have not been permitted to review the decision made by the prison's medical professionals. This does demonstrate a possible disagreement over which health problem-the mental disorder or the risk of kidney problems-posed a more serious medical threat to Kramer. But it is far short of an allegation of "grossly inadequate care" or unlawful behavior. *Cf. Terrance*, 286 F.3d at 844–47 (holding that doctors and nurses could be found to have provided grossly inadequate care after they failed to supervise decedent or plan for risks associated with decedent's medical conditions despite their knowledge of immediate risk factors of sudden death). That is, even if he were to prove the disagreement at trial, he would not be entitled to relief because no alleged fact tends to show that the prison doctors provided "grossly inadequate care" or that their treatments were so medically unsound as to violate the law.

*Kramer v. Wilkinson*, 302 F. App'x 396, 400–01 (6th Cir. 2008).

As in *Kramer*, Plaintiff's complaint is devoid of facts alleging that he received "grossly inadequate" care. As noted above, Plaintiff alleges that he suffered from side effects as a result of taking Haldol. Plaintiff's own exhibits, however, indicate that he "did see the provider again to address the matter and changes were made to [his]

16

Case 1:22-cv-00125-PJG   ECF No. 14, PageID.96   Filed 04/26/22   Page 17 of 19

regimen." (ECF No. 1-1, PageID.16.) Plaintiff's allegations fall far short of demonstrating that Defendants acted with deliberate indifference by prescribing him Haldol. His Eighth Amendment claims will, therefore, be dismissed.

### D. State Law Claims

Plaintiff vaguely mentions violations of State law. (ECF No. 1, PageID.6.) Presumably, Plaintiff intends to assert medical malpractice claims against Defendants. (*Id.*, PageID.9.) Claims under Section 1983, however, do not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state law claims, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims")); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction,

"[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Any state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in

good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.


Dated:  April 26, 2022             /s/ Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge